IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFERY M. FLECKENSTEIN, <u>et</u> <u>al.</u>, | : | |
|     Plaintiffs | : | No. 1:14-cv-1085 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| ROSS W. CRAWFORD, <u>et</u> <u>al.</u>, | : | (Magistrate Judge Schwab) |
|     Defendants | : | |

**<u>MEMORANDUM</u>**

Before the Court is the Report and Recommendation of Magistrate Judge Schwab, recommending that Defendants' motion to dismiss be granted in part and denied in part. (Doc. No. 26.) Upon review of the complaint, the Report and Recommendation, and Plaintiffs' objections thereto, the Court will adopt the Report and Recommendation in its entirety.

**I.    BACKGROUND**

Plaintiffs in the above-captioned action are Jeffery Fleckenstein, individually and as the Administrator of the Estate of Cherylann Dowell, Jeremy Fleckenstein and Justin Fleckenstein. On June 4, 2014, they filed a complaint arising out of the death of their mother, Cherylann Dowell. (Doc. No. 1.) They filed an amended complaint on July 18, 2014. (Doc. No. 6.) According to Plaintiffs, between 2009 and 2012, Defendant Ross W. Crawford was arrested for multiple violent crimes directed at Dowell.[1] (<u>See</u> Doc. Nos. 6 ¶¶ 19-25; 26 at 3.) Eventually, on May 21, 2012, after finding that he had violated his parole, Judge Bortner of the Court of Common Pleas of York County, Pennsylvania, issued an order stating in relevant part:

---

[1] For the sake of brevity, the Court will not rehash the thorough factual background provided by Magistrate Judge Schwab, but rather considers her detailed synopsis incorporated into this memorandum. (<u>See</u> Doc. No. 26 at 2-10.)

1

> [Crawford] is sentenced to the unserved balance of 396 days with reparole after six months of house confinement.
>
> Furthermore, Case 4868, Count 4, that is a sentence of three years' probation. He is to receive credit from March 14th, 2012. That is 69 days, and he is reparoled forthwith.

(Doc. Nos. 6 ¶ 30; 26 at 4.) That day, authorities released Crawford into the community, and did not place him under house arrest. (Doc. Nos. 6 ¶¶ 36-37; 26 at 5.) Eighteen days later, Crawford killed Dowell "by way of blunt force trauma to the head." (Doc. No. 6 ¶ 87.) Plaintiffs contend that immediately releasing Crawford violated Judge Bortner's order,[2] and exhibited deliberate indifference toward Dowell's rights and safety. (Id. ¶¶ 36-86.) In Plaintiffs' view, Judge Bortner's order did not require immediate release but, instead, required Plaintiff to be placed under house arrest. (Id. ¶¶ 36, 37.) Plaintiffs' additional allegations include but are not limited to allegations that Dowell was not notified of Crawford's release. (Id. ¶¶ 49-52.)

Named as Defendants in Plaintiffs' amended complaint are: (1) Ross W. Crawford; (2) John/Jane Does 1-20, believed to be employees of York County or the York County Adult Probation and Parole Department, and responsible for supervising Crawford; (3) Mary Sabol, warden at York County Prison; (4) Dana M. Brienza, Probation Officer in York County; (5) Kim McDermott, probation officer in York County; (6) K. Eyster, Probation/Parole Supervisor in York County; (7) Albert J. Sabol, Chief of the York County Adult Probation and Parole

---

[2] As Magistrate Judge Schwab noted, the meaning of Judge Bortner's order is both integral to the case and a matter of considerable dispute by the parties. Defendants have attempted to incorporate their own documents in the record before the Court that allegedly speak to this point. However, for the reasons discussed by Magistrate Judge Schwab (Doc. No. 26 at 5 n.7) – and discussed in more detail in Section III.C, infra, the Court will not consider these additional documents in its consideration of the motion to dismiss – rather, the Court will rely on the order as alleged in Plaintiffs' complaint. The precise meaning of the order – and the interpretation of the outside documents that allegedly speak to it – are better dealt with following discovery and development of a full record.

Department; (8) Mark S. Chronister, a York County Commissioner; (9) Paul D. Hoke, a York County Commissioner; (10) Christopher B. Reilly, a York County Commissioner; (11) the York County Prisoner Board of Inspectors; and (12) York County. (Doc. No. 6 ¶¶ 7-18.)

Plaintiffs' amended complaint brings four separate counts: (1) a violation of Dowell's due process rights under a state-created-danger theory, brought pursuant to 42 U.S.C. § 1983, against all Defendants save Crawford; (2) a municipal liability claim against York County and the York County Prison Board of Inspectors; (3) a survival action against all Defendants;[3] and (4) a wrongful death action, brought pursuant to Pennsylvania's Wrongful Death Act, 42 Pa. C. S. § 8301. (Doc. No. 6.) On July 23, 2014, all Defendants except Crawford moved to dismiss the amended complaint. (Doc. No. 8.) Crawford appears to be proceeding pro se.[4]

The Court referred the motion for preparation of a Report and Recommendation. (Doc. Nos. 15, 16.) It also referred the parties to mediation, but a settlement was not reached. (Doc. Nos. 20, 21, 24.) On February 26, 2015, Magistrate Judge Schwab filed a Report and Recommendation in which she recommended that the motion be granted as to (1) the wrongful death claim bought by the Fleckensteins in their individual capacities, and (2) the state-created-danger theory as alleged against the Commissioners, Chronister, Hoke, and Reilly. (Doc. No. 26.) She also recommends that the Court dismiss York County as a Defendant, and that the

---

[3] As Plaintiffs' concede, Count III is not an independent claim for relief; rather, it permits the Section 1983 actions to proceed. (See Doc. No. 26 at 10 n.8.)

[4] On October 7, 2014, Crawford filed a "motion for complex track," essentially asking that the Court schedule a trial date sufficiently far in advance so that he may first address his criminal charges. (Doc. No. 19.) Because much time has passed since since the filing of this motion – owing in part to the Court's referral of the motion and the subsequent filing of objections – the Court is confident that the case can now effectively be scheduled for trial at a later date without prejudicing Crawford, and the Court will deny that motion at this time.

Court deny the motion in all other respects. (Id.) On March 4, 2015, Defendants filed objections. (Doc. Nos. 27, 28.) Plaintiffs thereafter filed a response to Defendants' objections. (Doc. No. 29.) Below, the Court will address Plaintiffs' objections in turn.

## II. LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following

4

steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

## III. DISCUSSION

### A. Standing

In their motion to dismiss, moving Defendants challenge Plaintiffs' standing to bring the foregoing claims. (See Doc. No. 9.) Specifically, the Defendants contend that the Estate lacks standing to bring the Section 1983 claims, and that the individual Fleckensteins lack standing to bring both the Section 1983 and wrongful death claims. (Id. at 8.) Magistrate Judge Schwab recommends the Court find that (1) the individual Fleckensteins did not join in any of the Section 1983 claims and, further, the Estate has standing to bring such claims; and (2) the individual Fleckensteins fail to allege facts supporting their eligibility to bring a claim under Pennsylvania's Wrongful Death Act, and the Court should therefore dismiss that count without prejudice. (Doc. No. 26 at 14-18.) Neither party offers significant objection to these proposed findings,[5] and the Court finds no error in Magistrate Judge Schwab's conclusions. Accordingly,

---

[5] Although Plaintiffs' "brief in opposition to [Defendants'] objections" is not styled as an objection, they do briefly state in their brief that "to require Plaintiffs [to amend their wrongful death claim] would be to elevate form over substance" (Doc. No. 29 at 25), implicitly conceding that they have not adequately pled their capacity to bring such a claim. If Plaintiffs' wish to pursue the wrongful death claim, they must file an amended complaint in accordance with Magistrate Judge Schwab's analysis. (See Doc. No. 26 at 15-16.)

5

the Court will adopt her recommendation, will not dismiss the Section 1983 claims on standing grounds, but will dismiss the wrongful death claims without prejudice.

### B. Statute of Limitations

Defendants move to dismiss Plaintiffs' Section 1983 claims on the grounds that they are barred by the applicable statute of limitations. (Doc. No. 9 at 8-9.) Magistrate Judge Schwab recommends the Court find that Plaintiffs' present claims accrued within two years of June 4, 2014, the date this action was filed, and therefore are not barred by the statute of limitations. (Doc. No. 26 at 19-27.) Defendants object, asking the Court to find that the proper date of accrual for purposes of the statute of limitations was May 21, 2012, the date of Judge Bortner's order and Crawford's release, which occurred more than two years prior to the filing of Plaintiffs' civil rights claims. (Doc. No. 27 at 1-2.)

The Court will overrule the objection. Pennsylvania's two year statute of limitations for personal injuries is applicable to civil rights claims brought pursuant to 42 U.S.C. § 1983. See Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 78 (3d Cir. 1989). The statute begins to run at the point when the plaintiff knows or should have known of the injury which is the basis of the action. Mitchell v. Hendricks, 431 F. Supp. 1295 (E.D. Pa. 1977). "The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known." Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009).

Although Defendants urge the Court to find that the allegedly wrongful act triggering the statute of limitations was the decision to release Crawford on May 21, 2012, this is not the end of inquiry; rather, the Court must look to when Plaintiffs knew or should have known of their

6

injury. Here, Plaintiffs had no reason to know of the injury – the death of Dowell – before Dowell was killed on June 8, 2012. See Kach, 589 F.3d at 634 ("As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury."). The Court also observes that any suggestion that the Plaintiffs were or should have been aware of their injury at the time of Crawford's release, May 21, 2012, is strongly undermined by Plaintiffs' averment that Dowell was not even notified of Crawford's release, an allegation the Court must accept as true at this stage of the litigation. (See Doc. No. 6 ¶¶ 49-52.) Accordingly, the Court will adopt this recommendation, and finds that Plaintiffs' Section 1983 claims are not barred by the two-year statute of limitations.

### C. Absolute Immunity

Defendants move to dismiss the amended complaint on the grounds that they are entitled to absolute immunity from Plaintiffs' claims because they followed a valid and legal order from Judge Bortner in releasing Crawford into the community. (Doc. No. 9 at 10-11.) Magistrate Judge Schwab recommends the Court find that absolute immunity does not apply at this time because (1) the Commissioner Defendants are not alleged in the amended to complaint to have acted in a judicial or quasi-judicial function, and (2) the Court cannot at this time make a finding that the remaining individually named Defendants were acting pursuant to a valid Court order. (Doc. No. 26 at 29-31.) Defendants object, reiterating their position that they are entitled to absolute immunity. (Doc. No. 27 at 3.)

The Court will overrule the objections. As to the Commissioner Defendants, Chronister, Hoke, and Reilly, the Court agrees that the amended complaint does not clearly allege that these Defendants were acting in a judicial or quasi-judicial function. See Wilson v. Rackmill, 878

7

F.2d 772, 776 (3d Cir. 1989) ("In order for the defendants to succeed on a Rule 12(b)(6) dismissal based on absolute immunity, the allegations of appellant's complaint must indicate the existence of absolute immunity as an affirmative defense; the defense must clearly appear on the face of the complaint."). "Quasi-judicial immunity attaches to public officials whose roles are functionally comparable to that of a judge." Keystone Redevelopment Partners, LLC v. Decker, 631 F.3d 89, 95 (3d Cir. 2011) (internal quotations omitted). As Magistrate Judge Schwab points out, the allegations in the amended complaint are "aimed principally at the legislative or executive functions of [the Commissioner] defendants, such as their exercise of control of York County's budget." (Doc. No. 26 at 30); (see also Doc. No. 6 ¶¶ 76-79). Accordingly, based on the allegations in the amended complaint, the court cannot find that the Commissioner Defendants are entitled to quasi-judicial immunity.

As for Defendants' second objection, that they were following Judge Bortner's order, it is clear that "action taken pursuant to a facially valid court order receives absolute immunity from [Section] 1983 lawsuits for damages." Hamilton v. Leavy, 322 F.3d 776, 782-83 (3d Cir. 2003). However, it is a point of contention whether the Defendants' actually followed Judge Bortner's order as alleged in the amended complaint, and, moreover, it is in dispute precisely what documents actually constitute Judge Bortner's order. Plaintiffs allege that immediately releasing Crawford without precautions or into house arrest was a violation of that order. In support of Defendants' position that they followed a valid order, Defendants appended to their brief in support four pages of documents that purportedly constitute or clarify Judge Bortner's order, documents not attached to Plaintiffs' complaint. (Doc. No. 8 at 6-9.)

"Generally speaking, a trial court has discretion to address evidence outside the complaint when ruling on a motion to dismiss." Pryor v. Nat'l Collegiate Athletic Ass'n., 288 F.3d 548, 559-60 (3d Cir. 2002). A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). However, Defendants' initial proposed document was not authenticated, several of the pages contained handwritten notations, and none of its pages was the same as the purported order submitted by Plaintiffs. (Compare Doc. No. 8 at 6-9, Doc. No. 14.) Accordingly, Magistrate Judge Schwab concluded that "without the benefit of discovery, at this stage of the case, [the Court] is unable to interpret such documents standing alone or in combination with one another." (Doc. No. 26 at 5 n.7.) The Court agrees.[6] See Victaulic Co. v. Tieman, 499 F.3d 227, 236 (3d Cir. 2007) (citing Fed. R. Evid. 201(b)) ("While the [Federal Rules of Evidence] allow a court to take judicial notice at any stage of the proceeding, Fed.R.Evid. 201(f), . . . it should be done sparingly at the pleadings stage. Only in the clearest of cases should a district court reach outside the pleadings for facts necessary to resolve a case at that point.").

Ultimately, the Court concludes that – with or without Defendants' proffered new

---

[6] In response to Magistrate Judge Schwab's recommendation that the Court not consider their newly filed exhibit, Defendants attach to their objection "true and correct certified copies of the Orders so as to remove any doubt as to authenticity." (See Doc. No. 27 at 2, 6-9.) Although, as described above, the Court has discretion to consider an exhibit attached to a motion to dismiss under certain strict circumstances, the Court questions the propriety of doing so here, where the certified exhibit is attached not to a parties' initial motion to dismiss, but to an objection to a Report and Recommendation after the motion has already been fully briefed by the parties. At any rate, as discussed in this section, whether the Court incorporates the exhibit or not, the question of whether Defendants acted fully in accordance with the order is best suited for disposition at a later time.

exhibits – it cannot make a finding at this time as to whether or not the Defendants followed Judge Bortner's order in the process of releasing Crawford.  This conclusion is buttressed by the Third Circuit's observation that although absolute immunity is a question of law, whether a defendant acted pursuant to a facially valid order may also involve questions of fact, as it appears to in this case.  Hamilton, 322 F.3d at 783.  Accordingly, the Court does not believe it can resolve this particular dispute at the motion to dismiss stage.  Moreover, the allegations in the complaint are not limited to the act of following the order; for example, the complaint includes allegations that various individual Defendants failed to meet their obligation to inform Dowell of Crawford's release.  (Doc. No. 6 ¶¶ 49-51.)

Thus the Court will adopt Magistrate Judge Recommendation and declines to find that the Defendants are entitled to absolute immunity at this time.  However, Defendants may re-raise their immunity arguments upon full development of the record.

### D. Qualified Immunity

Defendants alternatively move to dismiss the complaint on qualified immunity grounds. (Doc. No. 9 at 6-7.)  Magistrate Judge Schwab recommends the Court deny this aspect of the motion, as (1) Plaintiffs have alleged the violation of a constitutional right, and (2) the Court cannot determine at this time whether the right was clearly established.  (Doc. No. 26 at 32-48.) Defendants object, as with absolute immunity, on the grounds that they acted reasonably in following Judge Bortner's order and releasing Crawford.  (Doc. No. 27 at 3.)

The Court will overrule the objection.  "Qualified immunity is a question of law for the Court and requires the Court to ask two questions: (1) whether, when considering the facts in the light most favorable to the plaintiff, the officer's conduct violated a constitutional right; and (2)

whether the constitutional right at issue was clearly established at the time of the arrest." Kelly v. Borough of Carlisle, 815 F. Supp. 2d 810, 819-20 (M.D. Pa. 2011) (citing Pearson v. Callahan, 555 U.S. 223 (2009)).  As the Court will discuss in Section III.E., infra, the Court agrees with Magistrate Judge Schwab that the amended complaint alleges the violation of a constitutional right.

The Court also agrees with Magistrate Judge Schwab that the second issue – whether the right was clearly established – cannot be determined by the Court at this time.  Saucier v. Katz, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").  Although Defendants ask the Court to find that they acted reasonably in relation to Judge Bortner's order, there are, as discussed above, outstanding disputes regarding the meaning of his order.  Additionally, Magistrate Judge Schwab highlights many as-yet unknown facts that the Court agrees are relevant to this consideration, including York County's policies regarding house arrest and electronic monitoring.  (Doc. No. 26 at 47); see also Kelly v. Borough of Carlisle, 815 F. Supp. 2d 810, 819 (M.D. Pa. 2011) (citing Carswell v. Borough of Homestead, 381 F.3d 235, 241 (3d Cir. 2004)) (observing that qualified immunity is often preferably addressed at the summary judgment stage).  Thus, the Court will adopt the Report and Recommendation on this point, but, as with their prior immunity arguments, Defendants may re-raise the qualified immunity issue following development of the factual record.

### E. State created danger/failure to state a claim

Defendants move to dismiss the amended complaint for failure to state a claim upon

which relief can be granted; most specifically, the failure to properly allege their claims under the "state created danger" theory. (Doc. No. 9 at 12-15.) Magistrate Judge Schwab thoroughly discussed the elements of such claims, and recommends that the Court deny the motion on this basis as to all Defendants other than the three Commissioner defendants. (Doc. No. 26 at 33-46.) Defendants raise multiple objections to this proposed finding. (Doc. No. 27 at 3-5.)

As Magistrate Judge Schwab noted, the elements of a "state created danger" claim are:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and,

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all

Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006). Magistrate Judge Schwab concluded that Plaintiffs adequately pled these elements as to all Defendants other than the Commissioner Defendants Chronister, Hoke and Reilly, and the Court agrees, although it will proceed to address Defendants' specific objections.[7]

Defendants object on the ground that Plaintiffs fail to allege that the harm was foreseeable to the non-Commissioner Defendants. (Doc. No. 27 at 3.) The Court disagrees. "To adequately plead foreseeability . . . we require a plaintiff to allege . . . an awareness of risk that is

---

[7] Plaintiffs' first objection to this finding is that none that the alleged acts shocked the conscience, inasmuch as Defendants were simply following a valid judicial order. As the Court has emphasized, it can not resolve that issue at this time, and will overrule that objection.

sufficiently concrete to put the [state] actors on notice of the harm." Henry v. City of Erie, 728 F.3d 275, 282 (3d Cir. 2013). As Magistrate Judge Schwab noted, the amended complaint includes allegations that the various non-Commissioner Defendants were on notice as to the threat Crawford posed to Dowell, including but not limited to their knowledge of his multiple prior arrests for incidents involving Dowell. (See, e.g., Doc. No. 6 ¶¶ 19-31, 60-64.) The Court will overrule this objection.

Defendants also object on the grounds that Plaintiffs have not pled any affirmative actions taken by the non-Commissioner Defendants. (Doc. No. 27 at 3.) A defendant must take affirmative action for a state created danger claim to lie; mere alleging a failure to act is insufficient. See Bright, 443 F.3d at 282 n.6. Magistrate Judge Schwab concluded that the amended complaint alleged affirmative acts (see Doc. No. 26 at 46), and the Court agrees, as the amended complaint alleges that the non-Commissioner Defendants released Crawford into the community in violation of Judge Bortner's order. (Doc. No. 6 ¶¶ 36-37, 65.) Defendants also object on the grounds that Defendant Sabol "does not have the responsibility of reviewing the paperwork as to each release of a prisoner," and Sabol therefore does not have the "personal involvement" necessary to sustain a Section 1983 action against her.[8] (Doc. Nos. 9 at 12, 27 at 4-5.) Although discovery may reveal this to be the case, the Court must accept the factual allegations of the complaint as true, and the amended complaint alleges that Sabol was responsible for releasing Crawford. (See, e.g., Doc. No. 6 ¶¶ 36-37, 47.) The Court will overrule this objection.

Defendants further object on the grounds that because Judge Bortner ordered Crawford's

---

[8] See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

release, the Defendants had no discretion to do otherwise. (Doc. 27 at 3.) Again, however, this objection speaks to the precise dictates of Judge Bortner's order, the nature of which the Court cannot divine at this time. Accordingly, the Court will adopt this recommendation, and will dismiss the state created danger claim in Count I only as to the Commissioner Defendants Chronister, Hoke, and Reilly. The Court will not dismiss this claim as to the remaining individual Defendants.

## F. Municipal Liability

Defendants move to dismiss the municipal liability claim against York County and the York County Prison Board of Inspectors. (Doc. No. 9 at 15-16.) Magistrate Judge Schwab recommends that (1) the Court dismiss York County as a defendant, and (2) the Court not dismiss the York County Prison Board of Inspectors, as Plaintiffs have adequately stated a claim against the Board. (Doc. No. 26 at 48-55.) Defendants object to the latter proposed finding. (Doc. No. 27 at 3-4.)

To sustain a municipal liability claim, a plaintiff must allege (1) the existence of a municipal custom or policy and (2) that the municipal employees violated the plaintiff's civil rights while acting pursuant to this custom or policy. Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); White v. Brommer, 747 F. Supp. 2d 447, 462-63 (E.D. Pa. 2010). To establish municipal liability based upon a custom or practice, the plaintiff must allege that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997). A plaintiff must also establish an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. Bielevicz v. Dubinon, 915 F.2d 845, 850-51

(3d Cir. 1990). A municipality's failure to adequately train its officers, agents and employees also gives rise to a cause of action under Section 1983 if the inadequate training reflects a deliberate indifference to an individual's civil rights and is "closely related to the ultimate injury." White, 747 F. Supp. 2d at 462-63 (citations omitted).

The Court agrees with Magistrate Judge Schwab and will overrule Plaintiffs' objections. As Magistrate Judge Schwab noted, Plaintiffs' complaint brings a variety of allegations regarding the policies and customs of the Prison Board, including but not limited to a policy of improper screening and assessments of inmates, a failure to implement policies to ensure that victims were timely notified of the release of dangerous inmates, and a failure to train employees on the standards that must be met before releasing prisoners. (See Doc. No. 26 at 53-54.) The Court is satisfied that these allegations are adequate at the motion to dismiss stage, and neither of Defendants' objections compel a different finding. Defendants first object because the Prison Board "lacks the authority to establish policies [,] . . . countermand or reinterpret judicial orders[.]" (Doc. No. 27 at 4.) This argument relies on Defendants' position that Crawford's release was properly effectuated pursuant to Judge Bortner's order, an issue the Court is not resolving at this time. Defendants also object on the grounds that "Plaintiffs have not and cannot demonstrate a duty of the part of a prison to notify potential victims of a prisoner release" (id.), which Plaintiffs allege the Defendants had an obligation to do under Pennsylvania law (Doc. No. 6 ¶ 50). Even assuming, arguendo, that Plaintiffs are correct on this point, Plaintiffs' allegations relevant to their municipal liability claim are not limited to issues surrounding Defendants' alleged failure to warn Dowell of Crawford's release. Accordingly, the Court will adopt the recommendation of Magistrate Judge Schwab, will dismiss defendant York County as a

defendant, but will not dismiss the Prison Board.

### G. Punitive Damages

Defendants move to dismiss the claim for punitive damages. (Doc. No. 9 at 12.) Magistrate Judge Schwab recommends that the Court decline to do so, noting that the amended complaint "sufficiently alleges claims that could result in punitive damages, depending on what facts are adduced through discovery." (Doc. No. 26 at 55-56.) Defendants object on the gounds that "all of the relevant conduct on this case involved releasing a prisoner in accordance with an Order of Judge Bortner." (Doc. No. 27 at 4.)

The Court will overrule the objection. "Punitive damages in [Section] 1983 cases are available where the defendants have acted with a reckless or callous disregard of, or indifference to, the rights and safety of others." Keenan v. City of Phila., 983 F.2d 459, 469-70 (3d Cir. 1992). Despite Defendants' argument that they did not violate Judge Bortner's order, the Court has repeatedly emphasized in this memorandum that the question of whether or not the Defendants in fact acted in accordance with that order is not ripe for disposition on this motion to dismiss. Ultimately, the Court must therefore agree with Magistrate Judge Schwab that, although Plaintiffs may not ultimately prevail on their punitive damages claim, the allegations in the amended complaint, taken as true, do not require the Court to dismiss the punitive damages claims at this time. See Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."). Accordingly, the Court will adopt Magistrate Judge Schwab's recommendation on this point.

### H. Governmental Immunity

Defendants move to dismiss Counts III (Pennsylvania survival statute) and IV (Pennsylvania Wrongful Death Act) against the individual Defendants on the grounds that they are entitled to immunity under the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"). (Doc. No. 9 at 17.) Magistrate Judge Schwab, having already concluded that the survivor's action in Count III did not constitute a separate cause of action, and that the Wrongful Death Act claim in Count IV was subject to dismissal on separate grounds, did not address this issue. Defendants object, and insist that the Court should declare the individuals immune from Plaintiffs' state law claims. (Doc. No. 27 at 4.)

The PPSTCA provides in relevant part that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S.A. § 8541. The PPSTCA extends immunity to employees of local agencies acting within the scope of their duties unless it falls into one of eight enumerated categories: (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) care, custody or control of animals. Pa. C.S.A. § 8542(a). The Court is not at all persuaded by Plaintiffs' argument that this section strips the Defendants of immunity because "animals" in the eighth category should be interpreted and expanded to also refer to the custody of a human being like Crawford. (See Doc. No. 29 at 25.)

However, the PPSTCA also strips an employee of immunity if he or she engages in conduct that is found to constitute "a crime, actual fraud, actual malice or willful misconduct."

17

42 Pa.C.S. § 8550; see Odom v. Borough of Taylor, No. 05-0341, 2006 WL 401796 (M.D. Pa. Feb. 21, 2006). Here, accepting Plaintiffs' factual allegations as true and viewed in a light most favorable to them, and similar to the Court's conclusion regarding punitive damages, the Court finds that Plaintiffs have adequately alleged that Defendants may have acted willfully, or with malice. (See, e.g., Doc. No. 6 ¶ 64) ("[Defendants Sabol, Eyster, Brienza, McDermott and Jane/John Does 1-20] deliberately and knowingly ignored the obvious threat that Crawford posed to Ms. Dowell, and decided not to timely set up Crawford' required electronic monitoring and/or return him to the York County prisoner."). Accordingly, the Court will not dismiss the state law claims on the grounds of governmental immunity. However, as with their other immunity arguments, Defendants may re-raise this issue at summary judgment following development of the record.

## IV. CONCLUSION

For the foregoing reasons the Court will adopt the Report and Recommendation, and grant Defendants' motion to dismiss in part. Plaintiffs may amend their wrongful death claim in Count IV within 21 days of the date of this order. An order consistent with this memorandum follows.