IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFERY M. FLECKENSTEIN, | : | |
| Individually and as the Administrator of | : | |
| the Estate of CherylAnn J. Dowell, | : | |
|     Plaintiff | : | No. 1:14-cv-01085 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| ROSS W. CRAWFORD, | : | |
|     Defendant | : | |

## MEMORANDUM

Before the Court is Plaintiff Jeffrey M. Fleckenstein ("Plaintiff")'s motion for default judgment as to Defendant Ross W. Crawford ("Defendant"). (Doc. No. 116.) For the reasons explained infra, the Court will grant the motion.

**I.    BACKGROUND[1]**

Plaintiff, an adult currently residing in Maryland, is the son of the late CherylAnn J. Dowell and also the administrator of Ms. Dowell's estate. (Doc. No. 33 ¶ 4.) Defendant is an adult currently incarcerated at the State Correctional Institution – Houtzdale in Houtzdale, Pennsylvania. (Doc. No. 114.)[2] Formerly named as additional Defendants in this case are various individuals employed by York County, Pennsylvania, including employees of the York County Adult Probation and Parole Department, as well as the manager of the York County

---

[1] The factual account recited herein is derived from Plaintiff's second amended complaint, the operative pleading in this matter. (Doc. No. 33.)
[2] A review of the docket in this matter indicates that Defendant's place of incarceration has changed since the filing of the second amended complaint. In a letter to the Court dated May 31, 2019, counsel for Plaintiff clarified that Defendant is currently incarcerated the State Correctional Institution – Houtzdale (Doc. No. 114), which is consistent with the information provided by the Pennsylvania Department of Corrections' Inmate Locator.

Prison (the "York County Defendants"). (Doc. No. 33 ¶ 6.)[3] Plaintiff initiated this action after Defendant killed Ms. Dowell upon his release from the York County Prison, and, in the second amended complaint, set forth the following causes of action: a violation of the Fourteenth Amendment to the United States Constitution, made actionable by 42 U.S.C. § 1983, based on theory of state-created danger liability, against the York County Defendants (Count I); a violation of the Fourteenth Amendment, also made actionable under 42 U.S.C. § 1983, for municipal liability, against the York County Prison Board of Inspectors (Count II); and wrongful death under Pennsylvania law against Defendant (Count III). (Doc. No. 33 at 19-27.) Because the York County Defendants have been dismissed from this case, and, therefore, the instant motion for default judgment pertains only to Defendant, the Court will recite the pertinent factual details herein only as they relate to Plaintiff's wrongful death claim against Defendant.

### A. Factual Background

Prior to Ms. Dowell's death, Defendant had been arrested on multiple occasions for committing violent crimes against Ms. Dowell, Defendant's estranged girlfriend. (Doc. No. 33 ¶ 13.) Such offenses included "aggravated assault, arson, burglary, and making terroristic threats." (Id. ¶ 14.) Specifically, in 2010, Defendant "was accused of taking Ms. Dowell hostage, assaulting her, and setting a fire at her home[,]" and in March of 2011, Defendant "pleaded guilty to [making] terroristic threats, criminal mischief, and harassment" as a result of "breaking into Ms. Dowell's home and threatening to assault her with a fireplace poker." (Id. ¶¶ 15-16.) In accordance with a plea agreement, the Court of Common Pleas of York County sentenced Defendant to a term of three years' probation "and ordered him to have no contact with Ms. Dowell." (Id. ¶ 17.) Subsequently, on August 23, 2011, at a hearing for violations of

---

[3] On June 7, 2019, after being notified that these defendants and Plaintiff reached a settlement as to the claims asserted against them (Doc. No. 114), the Court ordered that those defendants be terminated from the caption of this case (Doc. No. 115).

the aforementioned sentence, the state court judge "sentenced [Defendant] to six to 12 months of incarceration, three years of probation, and again directed [Defendant] to have no abusive contact with Ms. Dowell." (Id. ¶ 18.) On March 8, 2012, Defendant was then arrested for disorderly conduct and harassment for a separate incident involving Ms. Dowell, and, accordingly, was detained at the York County Prison on March 14, 2012. (Id. ¶ 19.) The relevant prison records pertaining to this period of incarceration include notations indicating that Defendant had a history of violent behavior. (Id. ¶¶ 20-22.)

On May 14, 2012, Defendant "was found guilty of disorderly conduct and harassment[,]" and on May 21, 2012, after determining that these convictions constituted violations of Defendant's parole conditions, the Court of Common Pleas judge presiding over Defendant's case sentenced Defendant "to the unserved balance of 396 days with reparole after six months of house confinement[,]" and also ordered a sentence of three (3) years' probation, with a sixty-nine (69) days' credit to be applied from March 14, 2012. (Id. ¶ 24.) Per this sentencing order, Defendant "was given . . . [t]hree years of probation (minus 69 days) – and immediately reparoled to begin serving . . . 'the unserved balance of 396 days with reparole after six months of house confinement.'" (Id. ¶ 25.) The state court notified the York County Defendants in writing of this sentencing order at the time of Defendant's sentencing. (Id. ¶ 26.)

As stated in the second amended complaint, "[i]nexplicably, in clear violation of the sentencing order, instead of having [Defendant] serve any of the unserved balance of 396 days, the [York County] Defendants immediately released [Defendant] into the community without warning Ms. Dowell." (Id. ¶ 27.) At this time, "pursuant to court order, [Defendant] was not to have any contact with Ms. Dowell until May 20, 2015" and "[d]espite the fact that the May 21, 2012[] [s]entencing [o]rder did not authorize [Defendant's] immediate release" from prison,

prison records show that Defendant was released from prison on May 21, 2012. (Id. ¶¶ 28, 33.) Defendant was not released immediately to house arrest, but, rather, was released "into the general community." (Id. ¶ 34.) Ms. Dowell was led to believe, in reliance on representations from the York County Defendants and information provided by the relevant notification system for victims of domestic violence, that Defendant was still incarcerated, and, as a result, did not feel compelled "to take extra security precautions to protect herself" from Defendant. (Id. ¶ 48.) At the time of Defendant's release, the relevant measures to implement a period of house arrest – such as the installation of electronic monitoring devices at a given residence – had not been arranged as to Defendant. (Id. ¶¶ 72, 82-83.) According to Plaintiff, therefore, when Defendant was released, but not immediately to house arrest, the York County Defendants "knew that they were actually setting him free, at least for a few weeks." (Id. ¶ 83.)

On June 8, 2012, local police "responded to Ms. Dowell's residence to investigate the report of an assault" in response to a 911 call from a friend of Ms. Dowell, who went to Ms. Dowell's home "to check on her welfare when she had failed to show up for work." (Id. ¶¶ 87-88.) Defendant then "emerged from a bedroom, covered in blood, and carrying a knife." (Id. ¶ 89.)[4] At Ms. Dowell's home, the responding police officers "discovered evidence of a struggle – toppled furniture, broken picture frames, and blood in numerous areas of the bedroom and the hallway floor[,]" and ultimately located Ms. Dowell's body in a bathroom in her home. (Id. ¶¶ 90-91.) After an autopsy was conducted, it was determined that Ms. Dowell's death was caused by blunt force trauma to her head. (Id. ¶ 92.)[5] Defendant was ultimately arrested for first-degree murder in connection with Ms. Dowell's death. (Id. ¶ 98.) Plaintiff states in the

---

[4] The second amended complaint also appears to allege that Defendant entered Ms. Dowell's home using a spare key. (Doc. No. 33 ¶ 89.)
[5] Ms. Dowell's death certificate indicates that her date of death was June 8, 2012. (Doc. No. 33 ¶ 93.)

4

second amended complaint that at the time she was killed by Defendant, Ms. Dowell presented a threat neither to Defendant nor to anyone else, and Defendant did not act in self-defense or with any type of lawful privilege to use deadly force toward Ms. Dowell. (Id. ¶¶ 95-97.)

      **B.**      **Procedural Background**

Plaintiff initiated the above-captioned action by filing a complaint in this Court against Defendants on June 4, 2014. (Doc. No. 1.) After motion practice, Plaintiff ultimately filed the instant second amended complaint against Defendants (Doc. No. 33), to which the York County Defendants filed an answer on November 5, 2015 (Doc. No. 34). Defendant did not file an answer or any other type of response to the second amended complaint, and to date, has not participated in the instant action in any manner discernible from the docket in this case. In light of Defendant's lack of participation in this case, Plaintiff filed with the Clerk a request for the entry of default against Defendant on January 23, 2018 (Doc. No. 70), and the Clerk entered default on January 25, 2018 (Doc. No. 71). Plaintiff also filed a motion for default judgment as to Defendant on February 14, 2018 (Doc. No. 74), which the Court denied without prejudice on March 23, 2018 (Doc. Nos. 82, 83). Specifically, the Court noted that the entry of default judgment against Defendant at that juncture would be inappropriate because, at that time, Plaintiff's claims against the York County Defendants were being litigated and the procedural posture of the case militated against granting Plaintiff's motion. (Doc. No. 82 at 5-6.) Following the dismissal of the claims asserted against the York County Defendants after Plaintiff and the York County Defendants reached settlement as to these claims, Plaintiff field the instant motion for default judgment against Defendant (Doc. No. 116), along with a brief in support thereof (Doc. No. 117), on June 14, 2019. Given Defendant's lack of participation in this matter, no

5

opposition to the motion has been filed, and because the applicable time period for doing so has expired, the motion is now ripe for disposition.

## II.     LEGAL STANDARD

Default judgments are governed by a two-step process set forth under Rule 55 of the Federal Rules of Civil Procedure. An entry of default by the Clerk of Court under Rule 55(a) is a prerequisite to a later entry of a default judgment under Rule 55(b). See 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (3d ed. 2007) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)."). Once the Clerk of Court has entered a default, the party seeking the default may then move the court to enter a default judgment under Rule 55(b)(2). Entry of default does not entitle a claimant to default judgment as a matter of right. See 10 James Wm. Moore et al., Moore's Federal Practice § 55.31 (Matthew Bender ed. 2010). Indeed, it is well settled that decisions relating to the entry of default judgments are committed to the sound discretion of the district court. See Emcasco Ins. Co. v. Sambrick, 834 F. 2d 71, 74 (3d Cir. 1987).

Three factors control the exercise of the district court's discretion in assessing whether default judgment should be granted following the entry of default: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." See Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)). "A finding that default judgment is appropriate, however, is not the end of the inquiry." Martin v. Nat'l Check Recovery Servs., LLC, No. 12-1230, 2016 WL 3670849, at *1 (M.D. Pa. July 11, 2016). Prior to entering a default judgment, the Court must also determine

6

whether the "unchallenged facts constitute a legitimate cause of action." See Wright, et al., supra, at § 2688; Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd., 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) ("Consequently, before granting a default judgment, the Court must . . . ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.") (citations omitted). In conducting this inquiry, "the well-pleaded, factual allegations of the complaint . . . are accepted as true and treated as though they were established by proof." See E. Elec. Corp. of N.J. v. Shoemaker Const. Co., 652 F. Supp. 2d 599, 605 (E.D. Pa. 2009) (citation omitted). While the Court must accept as true the well-pleaded factual allegations of the complaint, the Court need not accept the moving party's factual allegations or legal conclusions relating to the amount of damages. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

### III. DISCUSSION

Upon review of the record, including Plaintiff's motion, supporting brief, and accompanying submissions, the Court concludes that Plaintiff's motion should be granted, but because the Court presently cannot ascertain the appropriate amount of damages, the Court will defer the entry of judgment against Defendant until a trial on damages is conducted and the appropriate damages award can be determined. As an initial matter, the Court observes that Plaintiff's unchallenged allegations in the complaint, taken as true, state a legitimate cause of action for wrongful death under Pennsylvania law.[6] Pennsylvania's wrongful death statute reads as follows:

---

[6] As a result of the dismissal of Plaintiff's claims against the York County Defendants and the accompanying dismissal of those Defendants from this case, the only claim that remains pending before the Court is the instant wrongful death claim against Defendant under Pennsylvania law. "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for

7

(a) General rule. – An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

(b) Beneficiaries. – Except as provided in subsection (d), the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased, whether or not citizens or residents of this Commonwealth or elsewhere. The damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person under the statutes of this Commonwealth.

(c) Special damages. – In an action brought under subsection (a), the plaintiff shall be entitled to recover, in addition to other damages, damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death.

(d) Action by personal representative. – If no person is eligible to recover damages under subsection (b), the personal representative of the deceased may bring an action to recover damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death.

42 PA. CONS. STAT. § 8301.

Under this statute, "a spouse, children[,] or parents of a deceased [may] sue another for a wrongful or neglectful act that led to the death of the deceased." See Hatwood v. Hosp. of the Univ. of Pa., 55 A. 3d 1229, 1235 (Pa. Super. Ct. 2012). Recovery on such a claim is meant to "compensate the spouse, children, or parents of [a] decedent for the pecuniary loss, i.e.,

---

doing so." Hedges v. Musco, 204 F. 3d 109, 123 (3d Cir. 2000) (quoting Borough of West Mifflin v. Lancaster, 45 F. 3d 780, 788 (3d Cir. 1995)).

As noted by Plaintiff in the letter submitted to the Court on June 14, 2019 notifying the Court of the settlement reached as to Plaintiff's claims against the York County Defendants, it would be appropriate for the Court to retain jurisdiction over the instant wrongful death claim against Defendant on the grounds that: "[t]his case has been pending in this Court since 2014"; "[t]his Court is intimately familiar with the facts of the case and the underlying legal issues"; and "[t]he Clerk has already entered [d]efault against [Defendant]." (Doc. No. 118 at 1-2.) The Court agrees with these arguments from Plaintiff, and, accordingly, will retain jurisdiction over Plaintiff's wrongful death claim against Defendant.

contributions the decedent would have made for their shelter, food, clothing, medical care, education, entertainment, gifts, and recreation, they would have received from [the decedent] had the decedent lived." See Smith v. Sandals Resorts Int'l, Ltd., 709 F. Supp. 2d 350, 356 (E.D. Pa. 2010) (citing Kiser v. Schulte, 648 A. 2d 1, 4 (Pa. 1994); Manning v. Capelli, 411 A. 2d 252, 254 (Pa. Super. Ct. 1980); 42 PA. CONS. STAT. § 8301).

In the case at bar, Plaintiff is Ms. Dowell's biological son, as well as the administrator of her estate and, therefore, her personal representative. (Doc. No. 33 ¶¶ 4, 140, 144.) As such, Plaintiff is in an appropriate position to assert a wrongful death claim against Defendant under Pennsylvania law. Furthermore, the factual allegations discussed supra clearly indicate wrongful conduct on the part of Defendant that would entitle Plaintiff to assert such a claim. Accordingly, the Court finds that the second amended complaint sets forth an adequate basis for recovery on this claim. In addition, having considered the relevant factors in examining Plaintiff's motion, the Court finds that granting Plaintiff's motion is warranted because: (1) Plaintiff has demonstrated prejudice due to Defendant's lack of participation in this case in that Plaintiff's efforts to obtain damages have been impeded; (2) there is no showing of any meritorious defense on the part of Defendant; and (3) taking Plaintiff's allegations as true, the Court finds obviously culpable conduct on the part of Defendant. See Chamberlain, 210 F.3d at 164 ("Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984))). The Court, therefore, will grant Plaintiff's motion for default judgment against Defendant.

While the Court will grant Plaintiff's motion for default judgment, it will defer the entry of judgment as to Defendant pending a trial on damages. At this juncture, the Court cannot ascertain the damages to which Plaintiff would potentially be entitled, and Plaintiff has represented the same to this Court in connection with the instant motion. Specifically, Plaintiff requests that the Court conduct a non-jury trial to make a damages determination as to Defendant. (Doc. No. 116 at 1.) Finding such an approach appropriate in this case, the Court will grant Plaintiff's motion and order that a trial on damages be scheduled prior to the entry of judgment in this case.

## IV. CONCLUSION

In consideration of the foregoing, the Court will grant Plaintiff's motion for default judgment (Doc. No. 116) and defer the entry of judgment as to Defendant pending the outcome of a bench trial on damages. An appropriate Order follows.