# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFERY M. FLECKENSTEIN, | : | |
| Individually and as the Administrator of | : | |
| the Estate of CherylAnn J. Dowell, | : | |
|     Plaintiff | : | No. 1:14-cv-01085 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| ROSS W. CRAWFORD, | : | |
|     Defendant | : | |

## ORDER

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS**:

Presently before the Court are Plaintiff Jeffrey M. Fleckenstein ("Plaintiff")'s request for damages as to Defendant Ross W. Crawford ("Crawford"), following the Court's trial on damages conducted on October 3, 2019 (Doc. 122) and Plaintiff's supplement regarding damages submitted on November 6, 2019 (Doc. No. 129).

A.     BACKGROUND

Plaintiff initiated the above-captioned action on June 4, 2014 by filing a complaint in this Court against various employees of York County, Pennsylvania, including employees of the York County Adult Probation and Parole Department and the manager of the York County Prison (referred to collectively herein as the "York County Defendants"), as well as Crawford (Doc. No. 1), following the violent death of his mother, CherylAnn J. Dowell ("Ms. Dowell") on June 8, 2012.[1] As evidenced by the filings in this matter, and further explained at the trial held on October 3, 2019, Ms. Dowell died as a result of being beaten in her home by Crawford, her former partner, following his release from a period of incarceration at the York County Prison.

---

[1] The Court declines to recite the full factual background of this case herein and, instead, incorporates by reference the factual discussion set forth in the Court's August 15, 2019 Memorandum as to Plaintiff's motion for default judgment against Crawford. (Doc. No. 120.)

Ms. Dowell was subjected to extensive physical, psychological, and emotional abuse by Crawford, who had a documented history of domestic violence. In bringing this action, Plaintiff asserted the following causes of action: a violation of the Fourteenth Amendment to the United States Constitution on a theory of state-created danger liability against the York County Defendants (Count I); a violation of the Fourteenth Amendment for municipal liability against the York County Prison Board of Inspectors (Count II); and a wrongful death claim under Pennsylvania law against Defendants, including Crawford (Count III). After Plaintiff and the York County Defendants reached settlement and all claims against the York County Defendants were dismissed (Doc. Nos. 114, 115), Plaintiff's wrongful death claim against Crawford became the sole remaining claim in this case and the Court agreed to retain jurisdiction over this claim (Doc. No. 120 at 7-8 n.6). As a result of Crawford's lack of participation in this litigation, default was previously entered as to Crawford on January 25, 2018 (Doc. No. 71), and the Court ultimately granted Plaintiff's motion for default judgment as to Crawford pursuant to Federal Rule of Civil Procedure 55(b)(2) on August 15, 2019 (Doc. Nos. 120, 121). A damages trial was then held before the undersigned on October 3, 2019.[2]

      At trial, Plaintiff presented testimony from the following witnesses: Detective Mark Baker ("Detective Baker"); Assistant Coroner Steven Cosey ("Assistant Coroner Cosey"); Plaintiff; and Plaintiff's brothers, Jeremy Fleckenstein and Justin Fleckenstein. Detective Baker testified as to his investigation of Ms. Dowell's death, while Assistant Coroner Cosey testified as to his examination of Ms. Dowell's body following her death and the autopsy that was conducted in connection therewith. The majority of the testimony presented by Plaintiff, however,

---

[2] Plaintiff waived his right to a jury trial on damages in a status report submitted to the Court on June 14, 2019. (Doc. No. 118 at 2) (stating that "[i]n the interests of judicial economy, Plaintiff agrees to withdraw his request for a jury").

consisted of testimony from him and his brothers – all of whom are of adult age – regarding the following: their relationship with their mother generally, including both in their upbringing and adult years, the nature of their mother's relationship with Crawford, and the impact of their mother's death on each of their lives. Plaintiff did not present testimony as to any specific pecuniary losses associated with his mother's death.

Following the damages trial, the Court issued an Order on October 9, 2019 that directed Plaintiff "to submit additional evidence and/or authority in support of his request for compensatory damages, consistent with the Court's discussion" therein and stayed the Court's damages determination pending the receipt of said materials from Plaintiff. (Doc. No. 126 at 6.) In doing so, the Court observed, inter alia, as follows:

> Plaintiff offers no authority to support an award for society and comfort to surviving children who are financially independent and well past the age of majority. Finding no authority to prohibit an award in such circumstances, the Court turns to the evidence to address the amount of damages that are proper under the circumstances. The record contains no evidence from which the Court might discern what monetary award would adequately compensate the decedent's heirs for the loss of her society. Additionally, Plaintiff has offered no citations to cases that would serve as comparators. See Jester v. Hutt, 937 F.3d 233, 242-43 (3d Cir. 2019) (discussing the import of comparing punitive damage awards to others in similar cases). Finally, the Court is unable to conclude based on the record before it that an award of compensatory damages would not be duplicative of a compensatory award available to Plaintiff from any previously named co-defendants. In light of these glaring deficiencies in the record, Plaintiff is directed to supplement the record with additional authority and/or evidence within fourteen (14) days of this Order.

(Id. at 4) (footnote omitted).

In response to this directive, Plaintiff submitted a supplemental brief in support of his request for damages. (Doc. No. 129.) In his supplemental brief, Plaintiff states, in sum, that: (1) each of Ms. Dowell's sons should be award $5,000,000 in compensatory damages pursuant to case law regarding the availability of compensatory damages for

non-dependent, adult children for loss of society; (2) Plaintiff is entitled to $938.00 for Ms. Dowell's funeral and cremation services; (3) as it pertains to the collateral source rule, Crawford is not "entitled to a credit for the settlement payment made [to Plaintiff] by the York County Defendants"; and (4) with respect to punitive damages, an award of $10,000,000 is warranted.

    B.    <u>COMPENSATORY DAMAGES</u>

In asserting a claim for wrongful death under Pennsylvania law, Plaintiff may seek the following damages:

> (a) General rule. – An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery [and]
>
> . . .
>
> (c) Special damages. – In an action brought under subsection (a), the plaintiff shall be entitled to recover, in addition to other damages, damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death.

42 Pa. Cons. Stat. § 8301(a)-(c). "Damages for wrongful death are the value of the decedent's life to the family, as well as expenses caused to the family by reason of the death." <u>Rettger v. UPMC Shadyside</u>, 991 A.2d 915, 933 (Pa. Super. Ct. 2010) (quoting <u>Slaseman v. Myers</u>, 455 A.2d 1213, 1218 (Pa. Super. Ct. 1983)). "Thus, the members of the decedent's family . . . may recover not only for medical, funeral, and estate administration expenses they incur, but also for the value of [the decedent's] services, including society and comfort." <u>Id.</u> (citing <u>Slaseman</u>, 455 A.2d at 1218). With regard to damages for "society and comfort," the availability of such

damages absent any showing of a pecuniary loss has been questioned in Pennsylvania.[3] However, there is authority for recovery under the Wrongful Death Act for compensation for "the profound emotional and psychological loss" experienced by a minor plaintiff as the result of a decedent's death.  See id. (citing Machado v. Kunkel, 804 A.2d 1238, 1245 (Pa. Super. Ct. 2002)).

 In his supplement, Plaintiff asserts that he and his siblings are each entitled to $5,000,000 in compensatory damages under case law from outside Pennsylvania that is "instructive in light of the fact that the loss of a parent is suffered the same regardless of the jurisdiction." (Doc. No. 129 at 2.)  In support of this point, Plaintiff cites case law wherein courts awarded adult children of the decedents multi-million dollar compensatory damage awards for loss of society and comfort and, in doing so, took into account the profound loss experienced by the adult children who had a very close relationship with the decedent. (Id. at 1-5.)  Specifically, Plaintiff refers to the following decisions: Estate of Faull v. McAfee, 2019 WL 1253840, No. 6:13-cv-1746 (M.D. Fla. Mar. 19, 2019); Kerr v. Islamic Republic of Iran, 245 F. Supp.2d 59 (D.D.C. 2003); Weinstein v. Islamic Republic of Iran, 184 F. Supp.2d 13 (D.D.C. 2002); and Odom v. R.J. Reynolds Tobacco Company, 254 So.3d 268 (Fla. 2018).[4]  According to Plaintiff, this case law

---

[3] See Wynkoop v. Luke, No. 1999-cv-0142, 1999 WL 1538749, at *19-20 (C.P. Armstrong Cty. Sept. 23, 2019) (discussing authority providing "that wrongful death actions are intended to compensate a decedent's survivors for pecuniary loss" and reasoning that, in light of governing authority, the recovery for the decedent's "comfort and society" was dependent upon a showing by the plaintiffs "that such loss resulted in the destruction of a reasonable expectation of a pecuniary advantage for them"); see also Pa. Suggested Standard Civ. Jury Instr. 7.220, subcommittee n.3 (stating that as to loss of society and companionship, "one finds a blurring between the economic and emotional aspect of damages available in a wrongful death action").

[4] Both Kerr and Weinstein involved wrongful death actions asserted against the Islamic Republic of Iran pursuant to the Foreign Sovereign Immunities Act ("FSIA"), stemming from terrorist incidents in which the decedents were killed. See Kerr, 245 F. Supp.2d at 60; Weinstein, 184 F.Supp.2d at 20.  The other decisions relied upon by Plaintiff in his supplement – Odom and Faull – concern wrongful death actions asserted under Florida's wrongful death statute.  In

5

serves as an appropriate comparative tool to evaluate the compensatory damages award in this case, and like the relationships at play in the cited cases, "[t]he parent-child bond that existed between [Plaintiff and his brothers] and their mother was significant[,]" as demonstrated by their testimony "that her death hurt them deeply, emotionally, and to this day, continues to do so." (Doc. No. 129 at 5.)

Upon review of Plaintiff's supplemental response, as well as the authority provided therein, in addition to the governing law as discussed by the Court in its Order directing Plaintiff's supplemental response following the damages hearing on October 3, 2019 (Doc. No. 126), the Court finds that a compensatory damages award of $1,000,000 is appropriate. As was discussed at the damages hearing, Plaintiff's other claims against the York County Defendants resulted in a settlement of $500,000. (Doc. Nos. 126 at 4, 129 at 6-8.) While the Court accepts Plaintiff's assertion that any settlement amount between Plaintiff and the York County Defendants should not operate so as to reduce any recovery by Plaintiff from Crawford, the Court finds that this amount – $500,000 – informs the Court's decision regarding compensatory damages with respect to Crawford. In light of the relative uniqueness of the legal issue presented in this case – whether compensatory damages, absent pecuniary loss, are available to Ms. Dowell's independent, adult children for loss of society and comfort as a result of her death under Pennsylvania's wrongful death statute – the Court finds this figure of $500,000 to be an appropriate starting point from which to assess Plaintiff's potential compensatory damages. Recognizing that the $500,000 award represents a negotiated compromise and that Crawford was directly implicated in and deemed criminally liable for Ms. Dowell's death, however, the Court

---

Odom, the plaintiff asserted a wrongful death action and "sought noneconomic damages as [the decedent's] surviving daughter under Florida's wrongful death statute." See Odom, 254 So.3d at 271. In Faull, the district court considered a wrongful death action, in the context of a motion for default judgment, brought by the decedent's estate following the murder of the decedent by the defendant in Belize. See Estate of Faull, 2019 WL 1253840, at *1.

finds that Plaintiff is entitled to $1,000,000 in compensatory damages as to Crawford.[5] Accordingly, the Court will award Plaintiff $1,000,000 in compensatory damages for loss of society, in addition to $938.00 in compensatory damages pertaining to funeral and cremation expenses.

    C.    PUNITIVE DAMAGES

"Under Pennsylvania law, '[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'" Diehl v. CSX Transp., Inc., 349 F. Supp. 3d 487, 509 (W.D. Pa. 2018) (alteration in original) (footnote omitted) (quoting Hutchison ex rel. Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005)). The propriety of a punitive damages award is informed by the Due Process Clause of the Fourteenth Amendment, which "prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." See CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc., 499 F.3d 184, 188-89 (3d Cir. 2007) (quoting State Farm Mut. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003)). "In determining whether a punitive damages award comports with due process, courts must 'consider three guideposts: (1) the degree of reprehensibility of the

---

[5] The Court observes that the decisions provided by Plaintiff in his supplement are distinguishable from the case at bar in various respects. First, Kerr and Weinstein concerned wrongful death actions asserted pursuant to FSIA, while Plaintiff's wrongful death claim is made actionable by operation of Pennsylvania's wrongful death statute. See Kerr, 245 F. Supp.2d at 60; Weinstein, 184 F.Supp.2d at 20.

    Moreover, Odom involved a wrongful death action as a result of tobacco-linked illness, which is part of a broader body of case law stemming from Engle v. Liggett Group, Inc., 945 So.2d 1246. See Odom, 254 So.3d at 271 (describing the case as an "Engle progeny action against Respondent R.J. Reynolds, alleging that [the petitioner's] mother . . . died from lung cancer caused by her addiction to cigarettes manufactured by R.J. Reynolds" (footnote omitted)). Lastly, while Faull appears to be the most factually similar case when compared to the instant action in that it concerned the willful murder of the decedent by the defendant-in-default, see Faull, 2019 WL 1253840, at *1-5, the Court finds that, in light of uncertainty under Pennsylvania law as to Plaintiff's ability to recover wrongful death damages absent pecuniary loss, as noted by the Court in its previous Order issued following the damages hearing (Doc. No. 126 at 3-4), a compensatory damages award of $1,000,000 is appropriate.

7

defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded . . . and the civil penalties authorized or imposed in comparable cases.'" Id. at 188-89 (footnote omitted) (quoting State Farm, 538 U.S. at 418). Although punitive damages are not explicitly authorized by Pennsylvania's wrongful death statute, courts have indicated that punitive damages are recoverable in a wrongful death case under Pennsylvania law. See Dubose v. Quinlan, 125 A.3d 1231, 1246 (Pa. Super. Ct. 2015) (calling into question the proposition "that the Wrongful Death Act permits only pecuniary losses" stemming from the death of a relative), aff'd, 173 A.3d 634 (Pa. 2017).

Applying the above principles to the case at bar, the Court finds that a punitive damages award of $3,000,000 is warranted. As explained supra, the Court has determined that Plaintiff is entitled to $1,000,000 in compensatory damages. In assessing punitive damages, the Court finds that a multiplier of three (3) is appropriate because this multiplier results in a single-digit, 3:1 ratio of punitive to compensatory damages, which has been deemed permissible under the governing law. See Campbell, 538 U.S. at 425 ("Single-digit multipliers are more likely to comport with due process . . . ."). Under this ratio, the Court arrives at a punitive damages award of $3,000,000, a figure that furthers the objectives of punitive damages in that it punishes Crawford, the tortfeasor, for his outrageous conduct and, in the Court's view, would impose a sufficient financial burden on him so as to deter him from similar outrageous conduct upon his eventual release from prison. See Hutchison, 870 A.2d at 770 ("The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct." (citing Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800, 803 (Pa. 1989))); see also CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc., 499 F.3d 184, 193 (3d Cir.

2007) (acknowledging that "what 'may be awesome punishment for an impecunious individual defendant . . . [may be] wholly insufficient to influence the behavior of a prosperous corporation" (alteration in original) (quoting Cont'l Trend Res., Inc. v. OXY USA Inc., 101 F.3d 634, 641 (10th Cir. 1996))).  Accordingly, the Court will award Plaintiff $3,000,000 in punitive damages.

**AND SO**, on this 17th day of December 2019, based on the foregoing, **IT IS ORDERED THAT**:

1. The Clerk of Court is directed to enter default judgment in favor of Plaintiff Jeffrey M. Fleckenstein and against Defendant Ross W. Crawford as to Count III of Plaintiff's second amended complaint (Doc. No. 33) pursuant to Federal Rule of Civil Procedure 55(b)(2) as follows:

    a. Plaintiff is awarded $1,000,000 in compensatory damages for loss of comfort and society;

    b. Plaintiff is awarded $983.00 in compensatory damages for funeral and cremation services;

    c. Plaintiff is awarded $3,000,000 in punitive damages; and

2. The Clerk of Court is directed to **CLOSE** the above-captioned case.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
